UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:21-cv-00433-RMR-MEH

MALIREDDY S. REDDY,

    Plaintiff,

v.

ESSENTIA INSURANCE COMPANY,

    Defendant.

## DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION TO DISMISS DEFENDANT'S COUNTERCLAIMS

Defendant/Counterclaim Plaintiff Essentia Insurance Company ("Essentia") responds to the motion to dismiss (ECF No. 21) ("Motion") filed by Plaintiff/Counterclaim Defendant Malireddy S. Reddy ("Plaintiff") as follows:

### INTRODUCTION

In this automobile insurance coverage lawsuit, Essentia asserted counterclaims once it determined that Plaintiff misrepresented and concealed the actual location, storage security, and condition of three collector's vehicles he sought to insure with Essentia. Plaintiff's misrepresentations began with his initial application for insurance, which is explicitly incorporated into the Policy, and continued during the investigation of the claim, when Plaintiff filed this lawsuit.

In support of its counterclaims, Essentia included over one hundred factual allegations. While all of these allegations support Essentia's counterclaims, even just a few establish a

plausible claim for relief for breach of the anti-misrepresentation clause. For example, in his application for insurance, Plaintiff stated that his vehicles were garaged in a secure and enclosed building at his residence. This was not true. Contrary to many representations on the application, Plaintiff knew the vehicles were not garaged at his property, knew he had not seen them for over 15 months, and knew that at least one vehicle was being stored outside.

In an attempt to defeat the well-supported counterclaims, Plaintiff points to four allegations premised upon Essentia's "information and belief," while ignoring over one hundred other allegations. The Court should not credit Plaintiff's attempt to evade the consequences of misrepresenting and concealing material information from Essentia. Plaintiff's remaining arguments regarding Essentia's claim for declaratory relief and recoupment are similarly unpersuasive, as they are premised on a misunderstanding of the counterclaims and the law.

Essentia respectfully requests that the Court deny Plaintiff's motion to dismiss and allow its claims against Plaintiff to continue toward resolution on their merits.

## FACTUAL BACKGROUND

Plaintiff's misdeeds began in late August 2019, when he submitted an application for insurance policies premised upon information that Essentia subsequently discovered to be false. On August 27, 2019, Plaintiff submitted to Hagerty Insurance Agency, LLC ("Hagerty") an application for a Valuable Collections insurance policy ("Application") to cover several vehicles, including a 1971 Jaguar E-Type Series III ("Jaguar"), a 1984 Mercedes-Benz 380 SL ("Mercedes"), and a 1991 BMW 850i ("BMW"). (ECF No. 18 at ¶ 5.) The Application provides that coverage is contingent upon continued compliance with several conditions identified in the Application, including the following:

> **STORAGE**
>
> My personal property collection will be stored in a secure, fire-protected location. If collector vehicles are part of my personal property collection, they will be stored at their principal storage address in a solidly constructed, completed enclosed and locked structure.
>
> \*\*\*
>
> **CHANGES DURING ANY POLICY TERM**
>
> I acknowledge that it is my responsibility to inform Hagerty or my local broker of any change in the information provided herein after this form is submitted and a policy is issued . . . .

(*Id.* at ¶ 6.)

> Additionally, the Application included the following Applicant's Statement:
>
> I acknowledge that I have read and understood this application in its entirety and that if Essentia Insurance Company or Hagerty agrees to issue a policy to me, coverage will be contingent on the truth, accuracy and completeness of the information I provided herein. I agree that this application, and any materials submitted by me or at my direction with this application, shall be incorporated into and shall constitute a part of any policy issued, whether physically attached to the policy or not. Failure to comply with any of the above conditions may result in coverage being denied. Insurance coverage is subject to the terms, conditions, and exclusions in the policy.

(*Id.* at ¶ 7.)

Based upon the information Plaintiff provided in the Application, Hagerty issued a quote for coverage to Plaintiff's insurance broker and requested additional information about the vehicles and their storage. (*Id.* at ¶ 10.) In response to this request, Plaintiff submitted information about three storage locations, representing that each location was protected by burglar alarms and could safely shelter the vehicles indoors. (*Id.* at ¶¶ 11–15.) Plaintiff further notified Hagerty, through his broker, that the vehicles were currently garaged at one of those three properties, a residence located at 24525 Genesee Avenue in Golden, Colorado ("the

3

Genesee Ave. Property"). (*Id.* at ¶ 16.) Relying on these representations, and after a Hagerty underwriter reviewed satellite imagery of the property, Essentia agreed to issue Plaintiff an insurance policy. (*Id.* at ¶¶ 17–18.)

On August 29, 2019, Hagerty notified Mr. Reddy and his broker that it issued Classic Automobile Policy No. 7P88388 and Valuable Collections Policy No. 7P88388C, both effective September 1, 2019 to September 1, 2020, and (collectively, "the Policy"). The Policy's Agreement provided:

> In return for the premium payment and compliance with all applicable provisions of this policy and any endorsements, we agree to provide the insurance coverages shown in the Declarations and Schedules, which are part of this policy, for covered property owned by or in the legal car, custody and control of you.
>
> By accepting this policy, you agree that the information in the Declarations and any application are your agreements and representations. This policy is issued in reliance upon the truth of your representations. It includes all agreements existing between you and us or any of your representatives.

(*Id.* at ¶¶ 19–20.)

Pursuant to the Policy, Plaintiff was required to report to Essentia any loss event which may be covered under the Policy as soon as reasonably possible, and must provide details about when and where the loss occurred, how it happened, the name and address of all people involved, as well as identify other insurance that may cover the loss. (*Id.* at ¶ 21.)

The Policy includes the following provisions:

**GENERAL PROVISIONS**

\*\*\*

F.    CONCEALMENT OR MISREPRESENTATION

> All insurance provided by this policy will be null and void if, at any time, you or any person or entity with interest in the property conceal or misrepresent any

4

> material fact regardless of intent. No action or inaction by us will be deemed a waiver of this provision.
>
> ***
>
> K.   LEGAL ACTION AGAINST US
>
> No legal action may be brought against us until there has been full compliance with all the terms of this policy. Suit of action must start within 12 months of the date you first have knowledge of the loss.

(*Id.* at ¶ 22.)

Unbeknownst to Essentia when it issued the Policy, the representations Plaintiff made regarding the storage and condition of the vehicles were false. In fact, Plaintiff was not storing the vehicles at the Genesee Property at the time of his application, or at any time thereafter, since the residence was undergoing a renovation; in fact, the vehicles were not stored at any of the garaging locations he identified in his Application. (*Id.* at ¶ 24–25, 37.) Instead, since early 2018, Plaintiff had been storing the vehicles at the repair shop of an individual, Bora Akdis, whom one of Plaintiff's contractors knew. (*Id.* at ¶¶ 26–28, 35.) Plaintiff and Akdis had formed a verbal agreement for storage of the vehicles, though their agreement did not specify the period of storage, the location of storage, the cost of storage, or the maintenance for the vehicles. (*Id.* at ¶¶ 29–33.) Nor had Plaintiff verified whether Akdis had insurance or even a business license. (*Id.* at ¶ 34.) The vehicles were not being stored in a secure, enclosed structure, as he had represented in the Application. (*Id.* at ¶¶ 26–28.) In fact, Plaintiff *had not even seen* the vehicles for at least 15 months before submitting the application. (*Id.* at ¶¶ 36, 46.)

In late 2019, Plaintiff finally decided to try to locate the vehicles. (*Id.* at ¶ 51.) He made several calls to Akdis, but did not reach him. (*Id.*) Several months later, in February or March 2020, Plaintiff claims to have driven by Akdis's repair shop, but did not see the vehicles. (*Id.* at ¶

5

52.) Despite having no idea what had happened to his vehicles, Plaintiff did not report the loss to Essentia or the Police. (*Id.* at ¶ 53.)

It was not until about five months later, on July 31, 2021, that Plaintiff made a claim to Essentia for benefits under the Policy due to the purported theft of his vehicles. (*Id.* at ¶ 53.) At that time, Plaintiff also first reported the purported theft to the Denver Police department. (*Id.* at ¶ at 56.) Upon receiving Plaintiff's claim for benefits, Essentia promptly began investigating the loss. (*Id.* at ¶¶ 54–55.)

Plaintiff made numerous false statements to Essentia in the course of its investigation. (*Id.* at ¶ 58.) As part of its investigation, Essentia interviewed Plaintiff on August 2, 2020. (*Id.* at ¶ 57.) Plaintiff informed Essentia that he had seen the vehicles last in 2018 or the early part of 2019, when in reality, as of August 2, 2020, Plaintiff had not seen the vehicles since May 2018, when he drove by Akdis's repair shop and observed at least one vehicle stored outside. (*Id.* at ¶ 36.)

Plaintiff also told Essentia that Akdis used to come to the office and Mr. Reddy would pay him for storing the vehicles; in fact, Akdis visited Plaintiff's office only once, in July 2018. (*Id.* at ¶¶ 60–61.) Further, Plaintiff had paid Akdis only once, in July 2018 in the amount of $9,000. (*Id.* at ¶ 62.) Plaintiff saw the vehicles once while Akdis was in possession of them. (*Id.* at ¶ 64.)

By August 4, 2020, the BMW and the Mercedes had been found at AutoBahn AutoCare, 6401 Sheridan Blvd., Arvada, Colorado. (*Id.* at ¶ 65.) Akdis is the registered agent for AutoBahn AutoCare. (*Id.*) Both the BMW and the Mercedes had suffered several thousand dollars' worth of damage. (*Id.* at ¶¶ 67–70.) Plaintiff, who claimed in his Application that the vehicles were in

excellent condition, told Essentia that the damage occurred while the vehicles were in the possession of Akdis. (*Id.* at ¶ 67.)

In good faith, on October 2, 2020, Essentia issued a payment of $2,179.45 to Plaintiff for some of the alleged damage to the BMW, but determined that much of the damage to the BMW and the Mercedes was due to wear and tear. (*Id.* at ¶ 71.) Further, the covered damage to the Mercedes did not exceed the deductible. (*Id.*) In the same communication, Essentia expressly reserved its right to raise additional defenses if additional information warranted them and notified Plaintiff that it continued to investigate the Claim with respect to the Jaguar. (*Id.* at ¶ 72.) Plaintiff disagreed with Essentia's determination that much of the alleged damage to the BMW and the Mercedes was not covered. (*Id.* at ¶ 73.)

As part of Essentia's investigation into his claim, Plaintiff was examined under oath. (*Id.* at ¶ 74.) Through his testimony, Essentia learned that Plaintiff's agreement with Akdis for storage and maintenance of the vehicles had been arranged through one of Plaintiff's contractors. (*Id.* at ¶ 75.) Plaintiff never asked the contractor how he knew Akdis, or how long they had known each other. (*Id.* at ¶ 76.) Plaintiff also did not require Akdis to store the vehicles inside a secure structure as part of the agreement. (*Id.* at ¶ 77.)

Plaintiff confessed that the only time between early 2018 and July 31, 2020, that Plaintiff observed any of the vehicles was when he drove by the repair shop in May 2018, but never got out of his car. (*Id.* at ¶¶ 78, 81.) When he drove by, he observed that at least one of the vehicles was being stored outside. (*Id.* at ¶ 79.) Plaintiff admitted that he was not concerned that one of the vehicles was outside because he believed Akdis was taking care of the vehicles. (*Id.* at ¶ 80.)

7

Plaintiff also misrepresented his alleged visit to the repair shop in early 2020. (*Id.* at ¶ 86.) Plaintiff testified that when he went to check on his cars at the repair shop in February 2020, there were a few cars at the property. (*Id.*) He also testified, erroneously, that when he went to check on his cars at the repair shop in February 2020, there was a building at the property. (*Id.* at ¶ 87.)

Plaintiff's false statements during the course of Essentia's investigation into his claim frustrated the investigation and caused Essentia damage.

## LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 12(b)(6), the court's inquiry is "whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.'" *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "[A]ll well-pleaded factual allegations . . . are accepted as true and viewed in the light most favorable to the nonmoving party." *Sutton v. Utah State School for Deaf and Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999). "A 12(b)(6) motion should not be granted unless it appears beyond doubt that the [claimant] can prove no set of facts in support of [its] claim which would entitle it to relief." *Id.*

## ARGUMENT

### I.   ESSENTIA HAS PLAUSIBLY PLEADED A CLAIM FOR BREACH OF THE INSURANCE CONTRACT

Plaintiff argues that the Second Claim for Relief should be dismissed because it fails to state a claim for breach of contract. Plaintiff implies that because numerous factual allegations

pertain to occurrences before the inception of the Policy, they are irrelevant to Essentia's claim. In fact, Plaintiff's knowledge of the circumstances in which his vehicles were being stored for the eighteen months before he applied for the Policy is a fundamental basis of the claim for breach of the misrepresentation clause: Plaintiff misrepresented and concealed material facts in order to obtain the Policy on the false premise that the vehicles were in a secure location when, in fact, he knew they were not. Further emphasizing the tenuous nature of his motion, Plaintiff's primary argument focuses on just four paragraphs out of 117 in Essentia's counterclaims that Plaintiff argues are nothing more than "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." (ECF No. 21 at ¶ 11.) Essentia's well-pleaded facts fully support is counterclaims.

To prevail on its claim for breach of the policy's anti-misrepresentation clause, Essentia must show that Plaintiff misrepresented or concealed a material fact. (ECF No. 18 at ¶ 22.) Essentia need not establish reliance on Plaintiff's material misrepresentations or concealments. *Am. Diver's Supply & Mfg. Corp. v. Boltz*, 482 F.2d 795, 796 (10th Cir. 1973) (holding detrimental reliance is not required to succeed on a fraud-clause claim). The Policy explicitly eliminates any requirement that the misrepresentation or concealment be made intentionally. (ECF No. 18 at ¶ 22.) However, even under well-established law, the intent to deceive can be implied if the misrepresentations or concealments are made knowingly and deliberately. *Wagnon v. State Farm Fire & Cas. Co.*, 146 F.3d 764, 771 (10th Cir. 1998); *Martinez v. Hartford Underwriters Ins. Co.*, No. 12-CV-02405-MJW, 2014 WL 2016569, at *2 (D. Colo. May 15, 2014).

Considering even just a few of the factual allegations in Essentia's counterclaims, Essentia has stated a plausible claim that Plaintiff breached the anti-misrepresentation clause. Essentia alleged that Plaintiff knew that the BMW, Mercedes, and Jaguar were not stored at any of his residences, yet submitted an application claiming that the vehicles were garaged at his property in Golden, Colorado. (ECF No. 18 at ¶¶ 15–16.) The Policy explicitly incorporates representations made in the Application into the Policy; therefore, these false statements on the Application breach the anti-misrepresentation clause in the Policy. (*Id.* at ¶ 8.) These limited factual allegations alone state a plausible claim for relief.

However, Essentia did not limit the support for its counterclaims to this information, in part because Plaintiff continued to misrepresent and conceal material facts throughout the investigation of his claim. After first reporting his vehicles stolen—at least five months after realizing they were not where he thought they were—Plaintiff told Essentia that he had last seen them in 2018 or the early part of 2019, implying that he had seen them far more recently than he actually had seen them. (*Id.* at ¶ 58.) In fact, during his examination under oath months into the investigation of his claim, Plaintiff admitted he had not seen the vehicles since May 2018—over two years before first reporting them stolen and 15 months before the Policy incepted. (*Id.* at ¶ 59.) Moreover, it was only during the examination under oath that Plaintiff admitted to the extremely vague agreement he had with Akdis regarding the storage of the vehicles. (*Id.* at ¶¶ 75–77, 83–85.) Specifically, Plaintiff conceded that he had not defined what kind of maintenance he expected Akdis to perform, did not require Akdis to store the vehicles inside (even acknowledging he knew at least one vehicle was stored outside), and there was no specific

10

time frame or terms of payment. (*Id.* at ¶¶ 32, 77–79, 85.) When he initially submitted his insurance claim, Plaintiff concealed the undefined nature of this relationship from Essentia.

Through these belated admissions, Plaintiff essentially conceded that his application for insurance contains false statements. This is more than sufficient to establish a plausible claim for relief for breach of the anti-misrepresentation clause. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (holding that a complaint that contains sufficient factual allegations to state a claim to relief that is plausible on its face should not be dismissed).

Plaintiff's misguided focus on four allegations made "upon information and belief" does not change this analysis.  Plaintiff is incorrect that courts must categorically disregard facts alleged "upon information and belief" as being conclusory. Complaints regularly—and permissibly—allege facts "upon information and belief" where specific evidence is in the other party's control. This common principle, omitted from Plaintiff's motion to dismiss, is explicitly stated in at least one of the cases Plaintiff relies on. "Pleading on 'information and belief' is permitted under Rule 9(b) when essential information lies uniquely within another party's control, but only if the pleading sets forth the specific facts upon which the belief is reasonably based." *Delphix Corp. v. Actifo, Inc.*, No. C 13-4613 RS, 2014 WL 4628490, at *2 (N.D. Cal. Mar. 19, 2014) (quoting *Exergen Corp. v. Wal–Mart Stores, Inc.*, 575 F.3d 1312, 1330 (Fed.Cir. 2009)) (cited in Plaintiff's motion to dismiss at p. 10).

Instead of applying Plaintiff's categorical rule, a court must analyze the complaint before it determines whether it contains "enough facts to state a claim to relief that is plausible on its face." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Where a fact is alleged "upon

information and belief," the complaint must set forth specific facts that support that belief. *See Wexner v. First Manhattan Co.*, 902 F.2d 169, 172 (2d Cir. 1990) ("Where pleading is permitted on information and belief, a complaint must adduce specific facts supporting a strong inference of fraud or it will not satisfy even a relaxed pleading standard.").

Not even the cases Plaintiff cites in his motion apply the categorical rule he is urging. Instead, they look at the allegations made "upon information and belief" within the context of the whole complaint, as required by *Twombly*, *Iqbal*, and other cases. For example, in *Greenway Nutrients, Inc. v. Blackburn*, the District of Colorado stated:

> *In the context of this Complaint*, when the plaintiff begins a paragraph with the phrase "on information and belief," it is clear to the court that the plaintiff is positing an assumption or surmise, i.e. a naked assertion or conclusion, and while it may be a theory consistent with the plaintiff's position, such assertions are not allegations of fact. (See e.g., ¶¶ 42, 44, 45, and 47.)

*Greenway Nutrients, Inc.*, 33 F. Supp. 3d at 1244, n.4 (emphasis supplied). Plaintiff included this quote in his motion. (ECF No. 21 at 10.) Inexplicably, though, he omitted the Court's qualification, italicized above, thus giving the erroneous impression that the Court was stating a general rule. *Id.* The majority of allegations in Essentia's counterclaims are not made on information and belief, and, in the context of Essentia's Answer and Counterclaims, the court should deny Plaintiff's motion to dismiss.

## II. ESSENTIA'S DECLARATORY JUDGMENT ACTION DOES NOT SEEK TO IMPERMISSIBLY RESOLVE QUESTIONS OUTSIDE THE SCOPE OF THE STATUTE AND IS NOT REDUNDANT

### A. The Court should permit Essentia's claim for declaratory judgment to proceed under the Tenth Circuit's ruling in *Mhoon*.

12

In *State Farm Fire & Cas. Co. v. Mhoon*, 31 F.3d 979 (10th Cir. 1994), the Tenth Circuit set forth a two-part test that identifies the circumstances when federal district courts "should hear" an insurer's declaratory action that concerns an underlying lawsuit:

> [1] Will a declaration of rights, under the circumstances, serve to clarify or settle legal relations in issue? [2] Will it terminate or afford relief from the uncertainty giving rise to the proceeding?.

31 F.3d at 983. The Court also analyzed five additional factors:

> [1] whether a declaratory action would settle the controversy; [2] whether it would serve a useful purpose in clarifying the legal relations at issue; [3] whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race to res judicata"; [4] whether use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and [5] whether there is an alternative remedy which is better or more effective.

*Id.* Both the two-prong test from *Mhoon* and the five additional *Mhoon* factors weigh heavily in favor of permitting this declaratory judgment action to proceed.

        1.    <u>The Two-Prong Mhoon Test is Met.</u>

The two-prong *Mhoon* test is met here. As to the first *Mhoon* prong, whether "a declaration of rights . . . [will] serve to clarify or settle legal relations in issue," *id.*, the legal relations at issue in this case are whether Essentia owes any further amounts under the Policy to Plaintiff, in light of the terms of the policy, and Plaintiff's breach of the Policy's provisions.[1] There can be no doubt that permitting this action to continue to a conclusion will result in a

---

[1] Though not explicitly set forth in the claim for declaratory judgment, there is significant evidence that the damage to Plaintiff's recovered vehicles occurred prior to the inception of the policy. To the extent the Court is inclined to grant Plaintiff's motion to dismiss this claim, Essentia seeks leave to amend to explicitly incorporate into its claim a request for a declaration as to its rights and duties under the Policy in light of the Policy's exclusion of pre-existing damage.

13

declaration that Essentia owes no further amounts, or a contrary declaration, thereby "settling" those "legal relations."

The second *Mhoon* prong—whether a judicial declaration will "terminate or afford relief from the uncertainty giving rise to the proceeding"—is also met. 31 F.3d at 983. The "uncertainty giving rise to the proceeding" is the parties' dispute regarding whether Essentia owes any further amounts to Plaintiff under the Policy. This action will definitively terminate any uncertainty over these issues, because the Court will enter a judgment declaring either that Essentia owes no further amounts under the Policy to Plaintiff, or the contrary, thus satisfying the second *Mhoon* prong. Therefore, according to *Mhoon*'s mandate, "If an affirmative answer can be had to both questions, the trial court *should hear the case*." 31 F.3d at 983 (emphasis supplied).

        2.        <u>The Five Additional Mhoon Factors Favor Permitting This Action to Proceed</u>

The five additional factors considered in *Mhoon* also weigh in favor of denying Plaintiff's motion to dismiss.

The first factor is "whether a declaratory action would settle the controversy." *Mhoon*, 31 F.3d at 983. That factor is met here, as stated above.

The second factor is "whether it would serve a useful purpose in clarifying the legal relations at issue." *Id*. That factor, too, is met. (*Id.*) The relief sought by Essentia involves more than a determination as to the reasonableness of the action. In its counterclaims, Essentia also seeks a declaratory judgment declaring that Essentia has no liability to Plaintiff, having set forth facts pertaining to Essentia's handling of the claim, including Plaintiff's misrepresentations in breach of the Policy.

14

The third factor is "whether the declaratory remedy is being used merely for the purpose of 'procedural fencing' or 'to provide an arena for a race to res judicata'." *Mhoon*, 31 F.3d at 983. Essentia is not engaged in such conduct. Essentia properly filed its counterclaims after receiving service of Plaintiff's Complaint. (*See supra.*) Plaintiff instituted this litigation, not Essentia.

The fourth factor is "whether use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction" *Mhoon,* 31 F.3d at 983. No such concerns are at issue here, and Plaintiff makes no allegations to the contrary.

The fifth factor is "whether there is an alternative remedy which is better or more effective." *Id.* In particular, the Court should examine whether any underlying lawsuit or claim provides a "better or more effective" means of resolving the controversy. *See id.* In fact, Essentia's claim for declaratory judgment cannot be brought in a different tribunal. The claim for declaratory judgment arises from the same transaction or occurrence and is therefore compulsory pursuant to Rule 13. *See* Fed. R. Civ. P. 13.

In light of these considerations, *Mhoon* weighs heavily in favor of denying the motion to dismiss.

### 3. Essentia's claim for declaratory judgment is not redundant.

The Court should also reject Plaintiff's argument that Essentia's claim for a declaratory judgment is duplicative of its other counterclaims.

Courts regularly permit parties—including insurers—to maintain both a claim for declaratory relief and a claim requesting damages. For example, in *Regions Bank v. Commonwealth Land Title Insurance Company*, the insured moved to dismiss the insurer's claim

15

for declaratory judgment for failure to state a claim on the basis that the claim was duplicative of an affirmative defense. 2012 WL 5410609 at *1 (S.D. Fla. Nov. 6, 2012). The court denied the insured's motion to dismiss on the basis that, while the insurer's affirmative defense alleges "that [the insured's] breach of contract claim fails for lack of consideration because [the buyer's] interests fall within an exclusion" and the counterclaim, "on the other hand, seeks a declaration that [the buyer's] interests do in fact fall within the policy exclusion." *Id.* at 4. The court explained that duplication alone was not enough to strike or dismiss the pleading. The court stated, "[T]he mere fact that a declaratory relief claim may be duplicative of an affirmative defense is not enough, in and of itself, to warrant the dismissal or striking of a pleading. . . . Nor does mere redundancy *require* the Court to strike a claim." *Id.* at 4. (internal citations omitted); *see also id.* at 5 (stating that if the affirmative defense and counterclaim were really duplicative, no harm would be caused to the insured if the count for declaratory relief remained).

Similar to *Regions*, Essentia's claim for declaratory judgment should not be dismissed, as it seeks different relief and thus serves a useful purpose. Essentia's two other claims request that the Court find that Plaintiff materially breached the Policy; that, as a result of this material breach, coverage is vitiated as a matter of law; that Plaintiff's material breaches caused Essentia actual damages; and that Essentia is entitled to damages from Plaintiff. *See Astral Health & Beauty, Inc. v. Aloette of Mid-Mississippi, Inc.*, 895 F. Supp. 2d 1280, 1284 (N.D. GA. 2012) (denying plaintiff's motion to dismiss defendant's counterclaim for declaratory relief as redundant to plaintiff's breach of contract claim, explaining "[w]hen contract interpretation lies at the heart of the case, . . . permitting the redundant claims to proceed does serve a legitimate purpose").

Nor do Essentia's claims encompass identical factual or legal issues. Essentia's Second and Third Claims for Relief are based on Plaintiff's misrepresentations in violation of the Policy's misrepresentation and concealment provision. The claim for declaratory relief, however, is also based on Plaintiff's breach of the Policy's prompt notice provision, on the grounds that he failed to provide notice of the alleged loss as soon as reasonably possible. Neither the Second nor Third Claims for Relief consider Plaintiff's breach of the prompt notice provision. If the Court were to dismiss Essentia's claim for declaratory relief, this issue would remain unresolved.

Moreover, Plaintiff has failed to allege any prejudice he would suffer if the claim for declaratory judgment were to remain. As pointed out in *Regions*, if Essentia's claim for declaratory judgment is really a mirror image to Essentia's Affirmative Defenses, then little or no additional work will be required from Plaintiff. *See also Fidelity National Title Ins. Co. v. Captiva Lake Investments*, LLC, 788 F. Supp. 2d 970 (E.D. MO 2011) (citing *Richmond v. Centurion Exteriors, Inc.*, 2010 WL 3940592 *1 (M.D. Tenn. Oct. 6, 2010)).

### III. ESSENTIA HAS PLAUSIBLY PLEADED A CLAIM FOR RECOUPMENT

Plaintiff argues that the Third Claim for Relief should have been pleaded as a defense and not a counterclaim, and therefore must be dismissed. Plaintiff is incorrect as a matter of law. Further, even if Plaintiff were correct, this does not warrant dismissal of Essentia's allegations.

First, it is well established in Colorado that the remedy for a breach of an insurance policy's anti-misrepresentation clause is not merely that the insurer owes no further payment obligations to its insured. Instead, Colorado courts have found that the consequence of violating such a clause includes forfeiture of previously paid insurance benefits. *See Frontier Explor., Inc. v. Am. Nat'l Fire Ins. Co.*, 849 P.2d 887 (Colo. App. 1992) (finding "damages [for breaching the

17

fraud clause] to include the entire $117,050 paid"); *Northwestern Nat'l Ins. Co. v. Barnhart*, 713 P.2d 1360, 1361 (Colo. App. 1985); *Sunflower Condo. Ass'n v. Owners Ins. Co.*, No. 16-cv-02946-WJM-NYW, 2018 WL 2196089, at *2 (D. Colo. May 14, 2018); *Martinez v. Hartford Underwriters Ins. Co.*, Civil Action No. 12-cv-02405-MJW, 2014 WL 2016569 (D. Colo. May 15, 2014). Indeed, the court in *Martinez* examined the issue of whether a fraud clause violation could be invoked after the insurer had already issued a settlement check. 2014 WL 2016569 at *3. The court determined that "defendant may properly invoke the fraud clause even if it did so after a settlement check was issued." *Id.*

Based on Colorado case law recoupment of amounts paid is a remedy available to Essentia. *See Frontier Expl.*, 849 P.2d at 893; *Barnhart*, 713 P.2d at 1361; *Sunflower*, 2018 WL 2196089 at *2. Whether the court treats recoupment as a standalone claim is beside the point, although Colorado courts have permitted similar claims for recoupment by insurer's to proceed to trial. *See Copper Oaks Master Home Owners Ass'n v. Am. Fam. Mut. Ins. Co.*, 416 F. Supp. 3d 1115, 1131 (D. Colo. 2019).

To the extent that Plaintiff is correct that recoupment should be pleaded as a defense and not a counterclaim, such an error can be repaired by the Court and does not warrant dismissal of Essentia's allegations. Fed. R. Civ. P. 8(c)(2) provides that "[i]f a party mistakenly designates a defense as a counterclaim, or a counterclaim as a defense, the court must, if justice requires, treat the pleading as though it were correctly designated, and may impose terms for doing so." As a result, "it makes no difference that petitioners may have mistakenly designated their counterclaims as defenses." *Reiter v. Cooper*, 507 U.S. 258, 263 (1993).

## CONCLUSION

Essentia's well-pleaded allegations, largely ignored by Plaintiff's motion, sufficiently support Essentia's counterclaims. Wherefore, Essentia respectfully requests that the Court deny Plaintiff's motion to dismiss.

Dated: July 14, 2021.                              Respectfully submitted,

*s/ Elayna M. Fiene*
Jeremy A. Moseley
Elayna M. Fiene
Spencer Fane LLP
1700 Lincoln, Suite 2000
Denver, CO 80203
Telephone: 303.839.3800
Facsimile: 303.839.3838
Email: jmoseley@spencerfane.com
          efiene@spencerfane.com

Attorneys for Essentia Insurance Company

DN 6053302.6

**CERTIFICATE OF SERVICE (CM/ECF)**

I HEREBY CERTIFY that on July 14, 2021, I electronically filed the foregoing **DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION TO DISMISS DEFENDANT'S COUNTERCLAIMS** with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following email addresses:

- **Jonathan Edward Bukowski**
  jbukowski@merlinlawgroup.com,shall@merlinlawgroup.com,akarcz@merlinlawgroup.com

- **Timothy Graham Burchard , II**
  tburchard@merlinlawgroup.com,shall@merlinlawgroup.com,akarcz@merlinlawgroup.com

- **Elayna M. Fiene**
  efiene@spencerfane.com,lnorris@spencerfane.com,wkraemer@spencerfane.com

- **Jeremy A. Moseley**
  jmoseley@spencerfane.com,aricco@spencerfane.com,kkern@spencerfane.com

- **Zachary Eaton Williams**
  ZWilliams@merlinlawgroup.com,zachkupec@gmail.com

*s/ William Kraemer on behalf of Elayna Fiene*