IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 21-cv-00433-RMR-MEH

MALIREDDY S. REDDY,

    Plaintiff/Counter Defendant,

v.

ESSENTIA INSURANCE COMPANY,

    Defendant/Counter Plaintiff.

_____

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**
_____

**Michael E. Hegarty, United States Magistrate Judge**.

    Defendant/Counter Plaintiff Essentia Insurance Company ("Defendant") asserts three counterclaims against Plaintiff/Counter Defendant Malireddy S. Reddy ("Plaintiff") concerning the alleged breach of an insurance policy's misrepresentation provision. ECF 18. Plaintiff has filed the present motion to dismiss ("Motion"), seeking dismissal of all counterclaims. ECF 21. The Motion is fully briefed and has been referred to this Court for a recommendation. As set forth below, this Court respectfully recommends denying the Motion.

## BACKGROUND

    The following are material, factual allegations (as opposed to legal conclusions, bare assertions, or conclusory allegations) made by Defendant in its Counterclaim, which are taken as true for analysis under Fed. R. Civ. P. 12(b)(6) pursuant to *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

On August 27, 2019, Plaintiff submitted an application for a Valuable Collections insurance policy ("Application") for several vehicles to Hagerty Insurance Agency, LLC ("Hagerty"). ECF 18 ¶ 5. These vehicles included a 1971 Jaguar E-Type Series III ("Jaguar"), a 1984 Mercedes-Benz 380 SL ("Mercedes"), and a 1991 BMW 850i ("BMW"). *Id.* Plaintiff submitted the Application through his broker, Arm Multi Insurance Service ("insurance broker"). *Id.* ¶ 9. The Application contains several conditions for which continued compliance coverage is contingent. *Id.* ¶ 6. These include:

**STORAGE**

My personal property collection will be stored in a secure, fire-protected location. If collector vehicles are part of my personal property collection, they will be stored at their principal storage address in a solidly constructed, completed enclosed and locked structure.

\*\*\*

**CHANGES DURING ANY POLICY TERM**

I acknowledge that it is my responsibility to inform Hagerty or my local broker of any change in the information provided herein after this form is submitted and a policy is issued . . . .

*Id.* ¶ 7. Also included in the Application was an "Applicant's Statement" that indicated that the signee agreed that coverage "will be contingent on the truth, accuracy and completeness of the information" provided, and that "failure to comply with any of the above conditions may result in coverage being denied." *Id.* ¶ 8.

Based on the Application, Hagerty provided the insurance broker with a quote for coverage and requested additional information about the vehicles and their storage. *Id.* ¶ 10. Plaintiff completed a storage facility worksheet that included information about three storage locations, specifically representing that each location had burglar alarms and could safely house the vehicles. *Id.* ¶¶ 11–14. The insurance broker, on behalf of Plaintiff, stated that the vehicles

were garaged at one of those properties: 24525 Genesee Avenue, Golden, Colorado ("Genesee Property"). *Id.* ¶ 16. After a Hagerty underwriter reviewed satellite imagery of the three locations, Defendant agreed to issue the insurance policy to Plaintiff. *Id.* ¶¶ 17–18.

On August 29, 2019, Hagerty notified Plaintiff and his insurance broker that it issued Classic Automobile Policy No. 7P88388 and Valuable Collections Policy No. 7P88388C (collectively, "Policy"), both effective September 1, 2019 to September 1, 2020. *Id.* ¶ 19. The Policy contained an "Agreement" that stated:

> In return for the premium payment and compliance with all applicable provisions of this policy and any endorsements, we agree to provide the insurance coverages shown in the Declarations and Schedules, which are part of this policy, for covered property owned by or in the legal care, custody and control of you.
>
> By accepting this policy, you agree that the information in the Declarations and any application are your agreements and representations. This policy is issued in reliance upon the truth of your representations. It includes all agreements existing between you and us or any of your representatives.

*Id.* ¶ 20.

Also, the Policy's provisions required Plaintiff to report to Defendant any loss event that might be covered under the Policy as soon as reasonably possible. *Id.* ¶ 21. The report should include details about when and where the loss occurred, how the loss happened, the name and address of all those involved, and the identity of any other insurance that may cover the loss. *Id.* Among the Policy's provisions were the following:

> **GENERAL PROVISIONS**
>
> \*\*\*
>
> F. CONCEALMENT OR MISREPRESENTATION
>
> All insurance provided by this policy will be null and void if, at any time, you or any person or entity with interest in the property conceal or misrepresent any material fact regardless of intent. No action or inaction by us will be deemed a waiver of this provision.

3

\*\*\*

K. LEGAL ACTION AGAINST US

No legal action may be brought against us until there has been full compliance with all the terms of this policy. Suit of action must start within 12 months of the date you first have knowledge of the loss.

*Id.* ¶ 22.

Despite indicating otherwise on his Application, Plaintiff did not have his vehicles garaged at the Genesee Property. *Id.* ¶ 37. The residence at the Genesee Property was undergoing renovations in 2018, and Plaintiff determined that the vehicles could not be stored there. *Id.* ¶¶ 24–25. Instead, Plaintiff reached a verbal agreement with Bora Akdis,[1] an individual known by one of Plaintiff's contractors, for Mr. Akdis to store the vehicles at a repair shop on 903 S. Federal Blvd. *Id.* ¶¶ 26–36. Plaintiff had been storing the vehicles at this location since early 2018. *Id.* ¶ 35. Plaintiff drove by the location in May 2018 and saw that at least one of his vehicles was being stored outside. *Id.* ¶ 36. Thus, when Plaintiff submitted his Application, the vehicles "were not stored in a secure, enclosed structure." *Id.* ¶ 39. Plaintiff had not seen the vehicles for at least fifteen months before he submitted his Application. *Id.* ¶ 46.

In later 2019, Plaintiff decided he wanted to move the vehicles to the Genesee Property, so he made several calls to Mr. Akdis. *Id.* ¶ 51. Plaintiff was unable to reach him. *Id.* In February or March 2020, Plaintiff drove to the repair shop but did not see his vehicles. *Id.* ¶ 52. On July 31, 2020, Plaintiff submitted a claim for insurance benefits under the Policy, stemming from the

---

[1] There are numerous variations of the spelling of Mr. Akdis's name in the briefing and in the pleadings. In the Complaint, it is "Atkis." ECF 1. In the Motion, it is "Adkis." ECF 20. In the response and reply, it is "Akdis." ECF 28, 32. The Amended Answer and Counterclaim uses both "Akdis" and "Adkis." ECF 18. Because the Court must take the allegations in the Counterclaim as true, and the spelling most often used in that document is "Akdis," that is the spelling the Court will use in this Recommendation.

4

alleged theft of the vehicles. *Id.* ¶ 53. It was at this time that Plaintiff also first reported the purported theft to the Denver Police Department. *Id.* ¶ 56. Defendant began investigating Plaintiff's claim. *Id.* ¶ 55.

As part of its investigation, Defendant interviewed Plaintiff on August 2, 2020. *Id.* ¶ 57. Plaintiff reported that he had seen the vehicles in 2018 or in the early part of 2019. *Id.* ¶ 58. Plaintiff also asserted that Mr. Akdis would come to Plaintiff's office, and Plaintiff would pay him for storing the vehicles. *Id.* ¶ 60. Defendant alleges that Mr. Akdis only visited Plaintiff's office once. *Id.* ¶ 61. Further, Defendant alleges that Plaintiff only made one payment to Mr. Akdis regarding his vehicles. *Id.* ¶ 62.

By August 4, 2020, the BMW and the Mercedes were found at AutoBahn AutoCare located at 6401 Sheridan Blvd., Arvada, Colorado. *Id.* ¶ 65. Mr. Akdis is the registered agent for that company. *Id.* The two vehicles had suffered significant damage. *Id.* ¶¶ 67–68, 70. Plaintiff, who maintained that the vehicles were in excellent condition before storing them with Mr. Akdis, told Defendant that the two cars must have sustained the damage while in Mr. Akdis's possession. *Id.* ¶¶ 66–67. Defendant issued payment to Plaintiff in the amount of $2,179.45 for some of the alleged damage to the BMW, but Defendant determined that much of the damage to both vehicles was due to wear and tear. *Id.* ¶ 71. While issuing the payment, Defendant expressly reserved its right to raise additional defenses if new information warranted them. *Id.* ¶ 72. Plaintiff disagreed with Defendant's assessment. *Id.* ¶ 73.

Defendant examined Plaintiff under oath as part of its investigation. *Id.* ¶ 74. Through this process, Defendant learned that Plaintiff's agreement with Mr. Akdis was arranged by one of Plaintiff's contractors. *Id.* ¶ 75. Plaintiff never asked the contractor how or for how long he knew Mr. Akdis. *Id.* ¶ 76. Nor did Plaintiff require Mr. Akdis to store the vehicles inside a secure

structure. *Id.* ¶ 77. Plaintiff admitted that the only time he saw any of his vehicles between early 2018 and July 31, 2020 was when he drove by the repair shop in May 2018. *Id.* ¶ 78. He also admitted seeing that one of his vehicles was being stored outside. *Id.* ¶ 79. Plaintiff contended that he did not have concerns about a vehicle being stored outside because he believed Mr. Akdis was taking care of all his vehicles. *Id.* ¶ 80.

Defendant believes that the BMW and the Mercedes were never stolen. *Id.* ¶ 89. Rather, they were stored at Mr. Akdis's repair shop and then moved to AutoBahn AutoCare when Mr. Akdis moved his repair shop to that location. *Id.* ¶ 89. Defendant alleges that the BMW and the Mercedes were damaged prior to the inception of the Policy period, and that they suffered additional damage, including wear and tear, as a result of being stored outside in a non-secure location. *Id.* ¶¶ 91–92.

On those beliefs, Defendant asserts three counterclaims against Plaintiff. First, Defendant seeks a declaratory judgment that the Policy does not provide coverage for Plaintiff's claim. *Id.* ¶¶ 94–98. Second, Defendant asserts a breach of contract claim for Plaintiff's alleged breach of the Policy's misrepresentation and concealment provisions. *Id.* ¶¶ 99–111. Third, Defendant requests recoupment of the monies already paid to Plaintiff. *Id.* ¶¶ 112–17.

## LEGAL STANDARDS

The purpose of a motion to dismiss under Fed. R. Civ. P. 12(b)(6) is to test the sufficiency of the plaintiff's complaint. *Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 2008). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff pled facts which allow "the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." *Id. Twombly* requires a two-prong analysis. First, a court must identify "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusions, bare assertions, or merely conclusory. *Id.* at 680. Second, the Court must consider the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id.* at 681. If the allegations state a plausible claim for relief, such claim survives the motion to dismiss. *Id.* at 679.

Plausibility refers "'to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs have not nudged their claims across the line from conceivable to plausible.'" *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012) (quoting *Robbins v. Okla.*, 519 F.3d 1242, 1247 (10th Cir. 2008) (internal quotation marks omitted)). "The nature and specificity of the allegations required to state a plausible claim will vary based on context." *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1215 (10th Cir. 2011). Thus, while the Rule 12(b)(6) standard does not require that a plaintiff establish a prima facie case in a complaint, the elements of each alleged cause of action may help to determine whether the plaintiff has set forth a plausible claim. *Khalik*, 671 F.3d at 1192. However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. The complaint must provide "more than labels and conclusions" or merely "a formulaic recitation of the elements of a cause of action," so that "courts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the

7

mere possibility of misconduct," the complaint has made an allegation, "but it has not shown that the pleader is entitled to relief." *Id.* (quotation marks and citation omitted).

In addition to accepting all well-pleaded factual allegations as true, the Court must also view the allegations "in the light most favorable to the nonmoving party." *Santa Fe Alliance for Pub. Health and Safety v. City of Santa Fe, N.M.*, No. 20-2066, -- F.3d --, 2021 WL 1182285, at *4 (10th Cir. Mar. 30, 2021) (quoting *Moore v. Guthrie*, 438 F.3d 1036, 1039 (10th Cir. 2006)).

## ANALYSIS

As mentioned earlier, Defendant asserts three counterclaims against Plaintiff. These counterclaims are for declaratory judgment, breach of the misrepresentation provision, and recoupment. Although Plaintiff's Motion addresses the declaratory judgment claim first, the Court finds that starting with the breach of the misrepresentation provision claim is most efficient, since that claim influences the analysis of the declaratory judgment action.

### I.  Breach of the Misrepresentation Provision Claim

Plaintiff makes two arguments for dismissal of the breach of the misrepresentation provision claim. First, Defendant's allegations mostly pertain to pre-contractual activities and thus cannot form the basis for a breach of insurance contract claim. Mot. at 9. Second, those allegations that concern alleged misrepresentations during the policy period are conclusory because they are pleaded as "upon information and belief." *Id.* at 9–11.

As an initial matter, Plaintiff treats the claim as one for breach of contract. Mot. at 9; Reply at 2 (Defendant's "breach of contract claim cannot stand up to a Rule 12(b)(6) challenge . . ."). Defendant does not explicitly dispute this characterization. Instead, Defendant focuses on the claim as a "breach of the policy's anti-misrepresentation clause." Resp. at 9. Put differently, Defendant asserts that its claim arises out of the fact that "Plaintiff misrepresented and concealed

8

material facts in order to obtain the Policy on the false premise that the vehicles were in a secure location when, in fact, he knew they were not." *Id.* On its face, though, that sounds like a claim for fraud in the inducement as opposed to a breach of contract claim.

Different courts in this District have approached similar cases to this one in various ways. *Compare Chen Li v. Fed. Ins. Co.*, No. 20-cv-00175-DDD-STV, 2020 WL 8181865, at *4 (D. Colo. Aug. 7, 2020) (treating claim for "insurance fraud" as either a claim for fraud in the inducement or a fraudulent claim for benefits) *with Sunflower Condominium Ass'n, Inc. v. Owners Ins. Co.*, No. 16-cv-02946-WJM-NYW, 2017 WL 6276460, *9 (D. Colo. Dec. 11, 2017), *recommendation adopted* 2018 WL 1755784 (D. Colo. Apr. 12, 2018) (agreeing with insurer that claim for breach of the concealment, misrepresentation, or fraud provision of the policy sounds in breach of contract as opposed to common law fraud). To address this apparent disagreement, the Court will examine Colorado case law to determine the proper elements of Defendant's counterclaim.

> An insurance contract's fraud provision, like the one at issue in this case,
>
> intentionally imposes different standards of responsibility and damages—absolute honesty and forfeiture of *all* benefits of the policy and not merely unintended benefits—which removes this case from situations where a party seeks to rescind a contract without such a clause and thus must meet all of the requisites of common law fraud.

*Am. Diver's Supply & Mfg. Corp. v. Boltz*, 482 F.2d 795, 796 (10th Cir. 1973). Under Colorado law, an insurance policy is void and "the insurer is released from its contractual obligation where there is 'proof of a false statement by insured as to some material matter made for the purpose and with the intention of deceiving the insurer and inducing it to pay more insurance than the amount of the loss sustained.'" *Sunflower Condominium Ass'n*, 2017 WL 6276460, at *9 (quoting *Northwestern Nat'l Ins. Co. v. Barnhart*, 713 P.2d 1360, 1361 (Colo. App. 1985)).

9

In *Frontier Exploration, Inc. v. Am. Nat. Fire Ins. Co.*, the Colorado Court of Appeals upheld the trial court's use of jury instructions regarding a claim involving breach of an insurance contract's fraud provision. 849 P.2d 887, 892 (Colo. App. 1992). One jury instruction told the jury that if it found "that Plaintiff made a false statement as to the amount of the loss sustained for the purpose and with the intention of deceiving the Defendant to pay more insurance than the amount of the loss sustained," then the insurance contract would be void. *Id* The court held that this instruction "accurately state[d] the law under *Barnhart*." *Id.* Based on that instruction, the jury found that the plaintiff "falsely represented or concealed material facts which induced [the defendant] to pay . . . more than the . . . loss actually incurred." *Id.* at 893.

Considering *Barnhart* and *Frontier Exploration*, the Court agrees with the analysis in *Sunflower Condominium Association* that the elements of the breach of fraud provision claim are (1) that the insured made a false statement as to a material matter, (2) with the intention of inducing the insurer to pay more than the amount of the loss sustained. *Sunflower Condominium Ass'n*, 2017 WL 6276460, at *9; *Barnhart*, 713 P.2d at 1361; *Frontier Exploration, Inc.*, 849 P.2d at 892.

Here, Defendant alleges that Plaintiff's insurance broker, on behalf of Plaintiff, told Defendant that the three vehicles would be garaged at the Genesee Property. ECF 18 ¶ 16. But Plaintiff, as alleged by Defendant, did not house them at that property. Instead, he previously agreed with Mr. Akdis to store the vehicles at a repair shop. *Id.* ¶¶ 24–26. Plaintiff even drove by the repair shop in May 2018 and observed one vehicle being stored outside. *Id.* ¶ 36. Thus, when Plaintiff submitted his Application to Defendant in August 2019, the vehicles were not garaged at the Genesee Property. *Id.* ¶ 37. Plaintiff first submitted a claim for insurance benefits on July 31, 2020, reporting that the vehicles had been stolen. *Id.* ¶ 53. As part of the investigation, Plaintiff told Defendant that he had last seen the vehicles in 2018 or early 2019 (when he had seen them in

10

May 2018). *Id.* ¶¶ 58–59. He also told them that Mr. Akdis would come to his office where Plaintiff would pay him for storing the vehicles. *Id.* ¶ 60. Mr. Akdis only visited the office once, and Plaintiff only paid Mr. Akdis once in July 2018. *Id.* ¶¶ 61–62. When Plaintiff submitted a letter to the police regarding the vehicles, he represented that he confirmed that Mr. Akdis was storing the vehicles safely. *Id.* ¶ 63. In reality, Plaintiff had only seen the vehicles once, *id.* ¶ 64, and had made no agreement with Mr. Akdis on how to store the vehicles, *id.* ¶¶ 30–33.

While these allegations concern pre-contract actions, they form the backdrop of Defendant's later, post-contract allegations. In his Motion, Plaintiff argues that the four, post-contract allegations are all pleaded on "information and belief" and thus insufficient to state a plausible claim. Mot. at 9–10. Certainly, "on information and belief" allegations that merely posit an assumption or surmise are not allegations of fact that can plausibly state a claim. *See Greenway Nutrients, Inc. v. Blackburn*, 33 F. Supp. 3d 1224, 1244 n.4 (D. Colo. Mar. 26, 2014). But the Court must consider the pleading as a whole and not just individual allegations. *Id.* ("In the context of this Complaint . . ."). In other words, the four allegations identified by Plaintiff do not exist in a vacuum. For instance, Defendant alleges, "[u]pon information and belief, [that] the BMW and Mercedes were damaged prior to the inception of the Policy period." ECF 18 ¶ 91. Other allegations include that the vehicles were not garaged as Plaintiff indicated they would be, were stored outside, and given to someone without any understanding as to the maintenance of the vehicles. An allegation that the vehicles were damaged prior to the Policy period is not pure speculation but is consistent with Defendant's other allegations and theory of liability. The same is true for the other three "information and belief" allegations identified by Plaintiff.

Moreover, the "information and belief" allegations do not concern matters that would be within the personal knowledge of Defendant. "[P]leading on information and belief is not an

11

appropriate form of pleading if the matter is within the personal knowledge of the pleader or 'presumptively within his knowledge." Charles Alan Wright *et al.*, 5 Federal Practice & Procedure (Civil) § 1224 (3d ed., Sept. 2014 update). It would not be within Defendant's personal knowledge whether the BMW and Mercedes were stolen (¶ 89), whether Mr. Akdis abandoned the BMW and Mercedes (¶ 90), whether the BMW and Mercedes were damaged prior to the inception of the Policy period (¶ 91), or whether the BMW and Mercedes were damaged by being stored outside (¶ 92). *Cf. Byler v. Elicit Life LLC*, No. 14-cv-02103-WJM-NYW, 2015 WL 1816382, at \*4 (D. Colo. Apr. 20, 2015) (finding numerous allegations pleaded on information and belief to be within the pleader's presumptive personal knowledge). Therefore, pleading on information and belief would not be inherently problematic for these allegations.

Considering the counterclaim in its entirety, the Court finds that Defendant has stated a plausible claim for breach of the misrepresentation provision. *Sunflower Condominium Ass'n*, 2017 WL 6276460, at \*9 (holding that "the proposed counterclaim for Breach of Contract is plausible on its face"). Through multiple allegations, Defendant has identified numerous false statements as to a material matter with the implication that such statements were meant to induce Defendant into paying more. Although Defendant has plausibly pleaded the claim, Plaintiff will not be without recourse on a motion for summary judgment. For example, "[t]he materiality of a misrepresentation is a mixed question of law and fact that under most circumstances should be determined by the trier of fact." *Wagnon v. State Farm Fire & Casualty Co.*, 146 F.3d 764, 768 (10th Cir. 1998). But, based on the allegations that must be taken as true, the Court must recommend denial of the Motion on this claim.

## II.     Declaratory Judgment Claim

Plaintiff seeks dismissal of the declaratory judgment claim for two reasons. First, the Court should decline to hear the claim based on the factors in *State Farm & Cas. Co. v. Mhoon*, 31 F.3d 979, 983 (10th Cir. 1994). Mot. at 6–8. Second, this claim is unnecessarily redundant of its other claims. *Id.* at 8. As stated in the Counterclaim, Defendant requests a declaration that Plaintiff "has not complied with the terms of the Policy and that [he] has concealed and misrepresented material facts, thereby barring [his] recovery in this action, compelling [him] to return all amounts paid to [him] by [Defendant], and dismissing [his] claims for relief." ECF 18 at 25.

The Tenth Circuit in *Mhoon* described a two-part test that trial courts must consider when deciding whether to hear a declaratory judgment claim. First, "[w]ill a declaration of rights, under the circumstances, serve to clarify or settle legal relations in issue?" 31 F.3d at 983. Second, "[w]ill it terminate or afford relief from the uncertainty giving rise to the proceeding?" *Id.* "If an affirmative answer can be had to both questions, the trial court should hear the case; if not, it should decline to do so." *Id.* However, in addition to these two questions, the Tenth Circuit also identified five factors that the courts must consider:

> [1] whether a declaratory action would settle the controversy; [2] whether it would serve a useful purpose in clarifying the legal relations at issue; [3] whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race to *res judicata* "; [4] whether use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and [5] whether there is an alternative remedy which is better or more effective.

*Id.* (citing *Allstate Ins. Co. v. Green*, 825 F.2d 1061, 1063 (6th Cir. 1987)).

Here, the Court finds that a consideration of all factors weighs in favor of permitting the declaratory judgment claim to proceed. As to the two-part test, a declaration that Defendant owes no other amounts under the Policy will settle the legal relations between Defendant and Plaintiff;

13

further, a decision on the claim will terminate any uncertainty regarding the parties' legal relations under the Policy. Thus, there is an affirmative answer on both prongs of the two-part test. *Id.* The first of the additional five factors, namely would a declaratory action settle the controversy, is also answered in the affirmative for the same reasons. Similarly, for the second factor, Defendant seeks a declaration that it has no liability to Plaintiff, which necessarily would be useful in clarifying the legal relations at issue. The third factor is inapplicable here since Plaintiff filed the initial lawsuit, and Defendant filed its Counterclaim in response to the Complaint. Hence, there is no race to *res judicata*. Likewise, there is no material concern in this case that there would be an increase in friction between the federal and state courts.

Finally, as to the fifth factor, Plaintiff's argument is that Defendant has an alternative remedy in the form of its breach of contract claim. In other words, the declaratory judgment is wholly duplicative of the breach of contract claim. A court may dismiss a declaratory judgment claim that is duplicative or redundant to other claims. *Postal Instant Press v. Jackson*, 658 F. Supp. 739, 742 (D. Colo. 1987) (granting motion for summary judgment on defendants' claim for declaratory judgment because it was redundant to other claims); *Narvaez v. Wilshire Credit Corp.*, 757 F. Supp. 2d 621, 636 (N.D. Tex. 2010) (dismissing on a summary judgment motion both the breach of contract claim and the declaratory judgment claim redundant to it). However, the mere fact that it may be redundant does not require dismissal. "The existence of another adequate remedy does not preclude a declaratory judgment." Fed. R. Civ. P. 57. Even if Defendant's declaratory judgment claim proves unnecessary or redundant, it is too early at this stage to dismiss it. Plaintiff will remain free to oppose declaratory relief later, after further development of record. *Morinville v. U.S. Patent & Trademark Office*, 442 F. Supp. 3d 286, 296 (D.D.C. 2020) (denying a motion to dismiss for that reason). Therefore, in applying the *Mhoon* factors,

14

the Court finds that it can hear Defendant's declaratory judgment claim. The Court respectfully recommends denying the Motion as to this claim.

## III.   Recoupment Claim

Plaintiff also seeks dismissal of Defendant's recoupment counterclaim. First, Plaintiff asserts that relief in the form of recoupment is not available under the Policy, necessitating the dismissal of the claim. However, the relief is available under the breach of the misrepresentation provision claim. In *Frontier Exploration*, the jury found that the plaintiff had breached the concealment provision of the policy. 849 P.2d at 892–93. Consequently, the court found that the insurer "was released from its obligation, and it was appropriate for damages to include the entire" amount paid to the insured. *Id.* at 893. The ability to recoup costs already paid appears to be available to Defendant through that claim. Plaintiff has not cited a case to the contrary. Thus, the Court will not recommend dismissal of the claim on that basis.

Second, Plaintiff raises the argument that the claim for recoupment is not an independent claim but rather an affirmative defense. The parties have cited contradicting authority on this point. *Compare Rabin v. Fid. Nat. Prop. & Cas. Ins. Co.*, 863 F. Supp. 2d 1107, 1119 (D. Colo. 2012) ("In the absence of a statute providing otherwise, recoupment is purely defensive and not offensive, at least when employed in a court of law.") *with Copper Oaks Master Home Owners Ass'n v. Am. Family Mut. Ins. Co.*, 416 F. Supp. 3d 1115, 1131 (D. Colo. 2019) (permitting a claim for recoupment to proceed). The Court's independent research indicates that recoupment is more often treated as an affirmative defense. *See Vidstone, LLC v. Carnival Corp.*, 2017 WL 3914263, at \*6 (D. Colo. Sep. 7, 2017) (finding party "was required to plead any such overpayment as an affirmative defense"); *Citizen Band Potawatomi Indian Tribe of Okla. v. Okla. Tax Comm'n,* 888 F.2d 1303, 1304 (10th Cir.1989), *rev'd on other grounds,* 498 U.S. 505 (1991) ("Recoupment,

15

however, is an equitable defense that applies only to suits for money damages."). Yet, the Court could not find mandatory authority conclusively deciding the issue.

Ultimately, regardless of whether recoupment is a counterclaim or an affirmative defense, Defendant has raised the issue. Rule 8(c)(2) provides that "[i]f a party mistakenly designates a defense as a counterclaim, or a counterclaim as a defense, the court must, if justice requires, treat the pleading as though it were correctly designated." "[I]t makes no difference that [Defendant] may have mistakenly designated [its] counterclaims as defenses." *Reiter v. Cooper*, 507 U.S. 258, 263 (1993). Even if the Court recommended dismissal of Plaintiff's counterclaim, the Court would still recommend treating the claim as a properly designated affirmative defense. As this is Plaintiff's Motion, he bears the burden of demonstrating why dismissal is warranted. *E.g., Clarke v. Sopramco CV8*, No. 11-0643-CG-B, 2013 WL 3894943, at *2 (S.D. Ala. July 29, 2013). Without Plaintiff citing to binding authority that recoupment cannot be pleaded as a counterclaim, the Court will respectfully recommend denying the Motion as to this claim.

## CONCLUSION

For the reasons explained, the Court respectfully RECOMMENDS that District Judge Regina M. Rodriguez **DENY** the Motion [filed June 23, 2021; ECF 21].[2]

---

[2] Be advised that all parties shall have fourteen (14) days after service hereof to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. Fed. R. Civ. P. 72. The party filing objections must specifically identify those findings or recommendations to which the objections are being made. The District Court need not consider frivolous, conclusive or general objections. A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a *de novo* determination by the District Judge of the proposed findings and recommendations. *United States v. Raddatz*, 447 U.S. 667, 676-83 (1980); 28 U.S.C. § 636(b)(1). Additionally, the failure to file written objections to the proposed findings and recommendations within fourteen (14) days after being served with a copy may bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted or adopted by the District Court. *Duffield v. Jackson*, 545 F.3d 1234, 1237 (10th Cir. 2008) (quoting *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991)).

Respectfully submitted this 24th day of August, 2021, at Denver, Colorado.

BY THE COURT:

*Michael E. Hegarty*

Michael E. Hegarty
United States Magistrate Judge